IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EUGENE COLE, | Case No. 1:16cv3009 |
| Plaintiff, | MAGISTRATE JUDGE THOMAS M. PARKER |
| v. | |
| SWAGELOK CORPORATION, | **MEMORANDUM OF OPINION AND ORDER** |
| Defendant. | |

**I.     Introduction**

In 2014, Eugene Cole resigned from Swagelok Corporation after working at the company for 14 years.  Cole became a supervisor at the company in 2007 or 2008, but by 2009 Swagelok demoted him for failing to complete a performance improvement plan related to problems with his communication skills.  Cole claims that the demotion and Swagelok's refusal to interview or hire him for subsequent supervisory roles was discrimination based on his religion (Christianity), his disability (Temporomandibular Joint Disorder), and his military status (retired from the United States Marine Corps.).  Because Swagelok has presented evidence of legitimate non-discriminatory reasons for the adverse employment actions taken against Cole, and Cole has not submitted any evidence that these reasons were pretextual, and because Cole has failed to show severe or pervasive conduct constituting a hostile work environment, the court **GRANTS** summary judgment to Swagelok on all counts.

## II. Facts

The parties' Rule 56 evidence contains the following facts. Cole worked for Swagelok from August 2000 through August 2014 when he resigned. Eugene Cole Deposition, ECF Doc. No. 18-1 at pp. 22-23, 32. Around 2007, Cole moved to his first supervisory position with the company. Id. at 34-35. In a 2008 performance review his supervisor Ross Cosentino stated:

> Eugene and I have worked to temper down some of his communications. At times he has written emails that others could have felt were negative although his intentions were not that…Eugene's body language and tone of voice sometimes leads others to perceive that he is angry or upset and he is not. We have discussed this on a couple of occasions and he is trying to adjust this.

ECF Doc. No. 18-1, Ex. C, Page ID# 251.

In 2009, Swagelok eliminated Cole's shift, and he was transferred to an assembly supervisor position in Swagelok's Order Fulfillment Center ("OFC"). Id. at 44. In that role, he reported to Malcom Conner. Id. at 44. Conner received complaints from several employees regarding Cole's communication style. Conner Affidavit, ECF Doc. No, .17-2, Page ID# 143, ¶ 3. In his 2009 mid-year review of Cole, Conner stated:

> Gene has a tell-directed leadership style and frequently speaks in a loud authoritative manner. While this style may have served him well in Highland's machining environment, which is structured and paced differently from the SSSC OFC assembly environment, Gene needs to be mindful of how he is perceived. A number of Gene's direct reports have come to me concerned with how they perceive Gene's treatment of them. Some perceive him to be angry or that he yells at them all the time. In April Gene and I discussed the opportunity for him to develop a more moderate approach when interacting with this group. Gene was open to the feedback and had concerns of his own regarding the sensitivity level his group was displaying. Gene quickly ascertained that this group was different from the group he supervised at Highland and was willing to try to make the necessary adjustments for the team's success.
>
> Gene has worked to address these concerns that have been raised but has not demonstrated consistency in this area. I still receive unsolicited feedback that Gene has not done a good job of connecting with his associates…
>
> Gene's overall performance needs improvement. As a result the following action plans will be implemented to help Gene improve: Performance Improvement Process…

Cole Depo, Ex. G., Page ID# 276. As a result of the mid-year review, in September 2009, Conner placed Cole on a Performance Improvement Plan ("PIP"). Id. at 69; See also Conner Aff., ¶ 4.

Cole's PIP stated that he needed to "develop and demonstrate good team work and collaboration skills when it comes to his associate interactions." ECF Doc. 18-1, Page ID# 253. The PIP required Cole to refrain from "accusatory statements and tones that may create an intimidating environment" and keeping a log for when he demonstrated empathy, and "[c]reat[ing] time to speak one on one" with his associates "about their career goals, personal interests, or things they would like to try." Id. The PIP indicated that failure to meet any of the requirements could result in "further disciplinary action up to and including job reassignment or termination." Id. at Page ID# 254.

Cole stated that he understood that Conner felt he was "intimidating people…yelling on the shop floor, and…telling instead of discussing." Cole depo. at 70. Conner had expressed to Cole several times that his feedback to Cole was based on complaints from other associates. Id. at 70-71, Conner Aff. ¶3. For example, two of Cole's employees complained to Conner about Cole's communication style during a startup meeting. Id. at 75-77. One of the employees told Conner she felt humiliated by Cole. Id. at 77. Cole apologized to the employee. Id. In June 2009, Conner received another complaint about Cole's communication. Id. at 99-100. Someone complained that Cole was "shutting people down" during a plant management team meeting. Id. at 100. During a subsequent conversation about the meeting Cole complained that he did not feel like a part of the team because if people made a complaint about him he was "guilty." Id. at 100-101.

Eventually Cole informed Conner and an employee in human resources (Judy Siegrist) that he finished PIP and wanted out. Id. at 81-82. Conner asked if Cole had completed all the PIP requirements. Id. at 82. Cole stated that he had, however, Conner believed that Cole had not completed the requirements. Id. The PIP required Cole speak to each of his associates one-on-one. Id. Conner interpreted this condition to require Cole to take each employee off the shop floor to talk to them. Id. Cole protested Conner's interpretation. Id. In his end of the year review (for year 2009), Cole received a needs improvement rating for self-confidence and an unsatisfactory rating for the following competencies: (1) people development and (2) empathy. ECF Doc. 18-1, Ex. G, Page ID# 272-73, 275.

Under people development, Conner stated that Cole has "high integrity and is very well disciplined which is a strength for him. However, his direct reports have had a number of integrity and discipline concerns…Gene has not demonstrated the ability to get his associates to understand why things need to be done a certain way, and get their buy in. Associate development and effective interactions with this team has been an ongoing topic for Gene and I during his PI discussions." Id. at 272. Under empathy, Conner stated:

> …Gene has not developed a comfort level for having personal conversations particularly one on one off the floor sit-downs with his associates. As a result his associates and peers alike have difficulty relating to him. He is recognized by position (supervisor) but has not connected beyond that. This leaves his direct reports with the sense "it's all about the job or task" and not about them as people. The disconnect hinders associate development and minimizes participation. As a result, interactions between Gene, his peers and associates become tense and less involved as each party is seeking to end the interaction as quickly as possible…As a supervisor Gene has not yet consistently performed to expectations in this area.

Id. at 275.

Two weeks after being presented with this review, in February 2010, Swagelok demoted Cole from his supervisory role. Cole depo. at 82, 107, 121, 136. Cole returned to a Tool Crib

4

Operator – 4 position in March 2010. Id. at 48-19; Conner Aff., ¶6. In that position, Cole received positive performance reviews and salary increases for the next few years. See Cole Depo., Exs. P-S.

Cole pursued other supervisory roles, but was not selected for these jobs.[1] He applied to be a Tool Crib Supervisor in May 16, 2013, and a Senior Production Manager in October 13, 2013. Id. at 164; ECF Doc. 17-4, Page ID# 164-67. The hiring managers for both of these positions (Christopher Gravius and Behram Ginwalla, respectively) stated that they were unaware of any complaints of harassment or discrimination by Cole. ECF Doc. 17-4, Page ID# 164, ¶5; Page ID# 166, ¶5. Mr. Gravius stated that he selected another individual (a disabled veteran) for the role and did not believe that Cole's "performance or leadership style would lend itself to a Supervisor role." Id. at Page ID# 164, ¶3. Mr. Ginwalla stated that he hired Holly Colson the position based on his first hand observations of her performance. Id. at Page ID# 166, ¶4. On August 8, 2014, Cole submitted his two-week' notice to Swagelok after being hired as a lab manager at Hi-Tech Metal Group. Id. at p. 22-24. He resigned from Hi-Tech in October 2014 and stopped looking for another job in December 2014. Id. at 23-25, 27.

Cole alleges that discriminatory comments were made to him while involved in the PIP process in 2009/2010 on which he bases his claims of discrimination. Cole states that during a PIP status meeting Conner told him he did not fit in at Swagelok because he learned his

---

[1] Cole alleged in paragraphs 20 and 30 of the complaint that he had applied for approximately twenty supervisory jobs. But he has only submitted specific Rule 56 evidence of two such applications. His submitted deposition testimony did indicate in more general fashion that he had submitted repeated applications for positions but kept getting turned down. See e.g. ECF Doc. No. 20-1, Page ID# 409. He has not proffered any evidence regarding the stated reasons for his having been denied these unspecified positions nor given Swagelok an opportunity to respond. The court cannot find there to be any genuine issue of disputed facts concerning these generally described occurrences.

communication style in the Marines. Id. at 112-13, 136. Cole bases his military status discrimination claim on this comment. Id. at 128

Cole also states that in June 2009, after Cole expressed his appreciation for an employee who had gotten him medication for an aspirin for a headache and jaw pain, Conner responded that he needed to tell everyone about his TMJ pain/disability or could not show pain on the shop floor because it made him seem unapproachable. Id. at 87-89. Cole states that Conner used this criticism as an example of Cole's poor communication skills. Id. at 89-90. Cole bases his disability discrimination claims on this comment. Id. at 128. He claims that he complained to human resources about this comment. Id. at 85.

Finally, Cole claims that in early 2010, plant manager Ivan Begovic made a discriminatory comment to him. Cole asked Begovic, Conner's manager, to remove him from PIP. He said he felt like "David after Bathsheba." Id. at 123. The next time he spoke to Begovic he states that Begovic told him that he did not fit into Swagelok culture. Id. Begovic allegedly also said, "after all, can you imagine a Christian in the Marine Corps?" Id. Cole responded, "like Lieutenant Colonel Diddams? Lieutenant Colonel Diddams was Christian, yet he was a fine Marine officer." Id. at 123. Cole states that Begovic then admitted that his comment was inappropriate and Cole agreed. Id. at 125.

### III. Summary Judgment Standard

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.2505, 91 L.Ed. 2d 202 (1986). As a result,

6

"[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56 (e)(2). As the Supreme Court has explained, "[the non-moving party] must do more than simply show that there is metaphysical doubt as to the material facts." *Matsushita Elec., Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585-86, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson,* 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether genuine issues of material fact exist, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. *Anderson,* 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of any genuine issue of material fact." *Celotex v. Catrett,* 477 U.S. 317, 323-24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed R. Civ. P. 56(c), (e).

**IV.     Analysis**

Cole has asserted four claims[2] against Swagelok: (Count 1) Religious Discrimination under Title VII; (Count 2) Disability Discrimination under the Americans with Disabilities Act ("ADA") (42 USC § 12112); (Count 3) Religious, Disability, and Military Discrimination under

---

[2] Cole's complaint entitles the first three causes of action as First Claim, Second Claim and Third Claim. The fourth is entitled Count Four. For ease of reference each cause of action will be referred to herein as Count "x."

ORC § 4112.02; and (Count 4) retaliation. ECF Doc. No. 1, Page ID# 4-7. Swagelok argues that it is entitled to summary judgment for the following reasons. First, Swagelok claims Cole is not disabled under the ADA or ORC §4112.02. ECF Doc. No. 17, Page ID# 90-91. Second, Swagelok argues that even if Cole could establish a *prima facie* case of discrimination, it had a legitimate and non-discriminatory reason for not hiring him for two subsequence supervisory positions. Id. at 93-95. Third, Swagelok contends that Cole fails to show a hostile work environment on the basis of religion or disability under Title VII or R.C. §4112.02. Fourth, Swagelok argues that Cole has not demonstrated retaliation. Id. at 98-102. Finally, Swagelok contends that Cole's R.C. § 4112.02 claim of military discrimination fails on the merits. Id. at 103.

### A. Disability Discrimination Claim

Cole alleges in Count 2 that Swagelok violated the ADA by discriminating against him based on a disability – Temporomandibular Joint Disorder (TMJ). ECF Doc. No. 1, Page ID# 5. The evidence Cole relies on to support his disability discrimination claim is one comment from his supervisor, Conner. Cole depo p. 122. Cole alleges that Conner told him he could not show pain on the shop floor because if he did he was "unapproachable" and he either had to not show pain or "tell everybody on the shop floor what's wrong…so they don't have to be concerned." (Cole Depo., p. 87-88). Cole state that he understood Conner's comment to be a criticism of his communication style and that Conner used the incident as an example of Cole's poor communication skills. Id. at p. 89, 90. Swagelok counters that Cole has not demonstrated disability within the meaning of the ADA and that it had a legitimate non-discriminatory reason for not hiring Cole for two supervisory positions.

"The ADA prohibits covered employers from discriminating 'against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.'" *Hoskins v. Oakland County Sheriff's Dept.*, 227 F.3d 719 (6th Cir.2000) (quoting 42 U.S.C. § 12112(a)). There is no direct evidence of the existence of a disability or disability discrimination here. Instead, Cole relies on indirect evidence and, thus, the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), applies. *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1105 (6th Cir. 2008). Under that framework, Cole must first establish a prima facie case of disability discrimination. *Id.* If he does, then Swagelok must articulate a legitimate, non-discriminatory reason for its actions. *Id.* If it does, the burden shifts back to Cole to show by a preponderance of evidence that the proffered evidence is a pretext for discrimination. *Id.*

The parties dispute whether Cole made out a *prima facie* case of disability discrimination and they dispute whether Cole is even disabled. The parties also dispute whether Swagelok's reasons for demoting Cole and/or not later choosing him for open supervisory positions was pretextual. It is not necessary to decide whether Cole has put forth a *prima facie* disability discrimination case, however, because even if it is assumed that he has, Cole has failed to identify any factual dispute concerning Swagelok's assertion that it had legitimate non-discriminatory reasons for its actions. He has not, therefore, raised any inference that Swagelok's stated reasons for its actions were pretextual.

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually

9

motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Michigan Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012); *quoting Chen v. Dow Chemical Co.*, 580 F.3d 394, 400 (6th Cir.2009). The employee must set forth enough evidence so that a reasonable jury could find "both that the [employer's] reason was false, and that discrimination was the real reason" for the adverse employment action. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (internal citation omitted). Swagelok relies on two affidavits to support its claim that it had legitimate non-discriminatory reasons for demoting Cole and for not selecting him for two supervisory positions in 2013. In both affidavits the Swagelok hiring manager stated that he was unaware of Cole's asserted disability or previous complaints of discrimination. Mr. Gravius stated that he hired another individual (a disabled veteran) and did not choose Cole for the position because he "did not believe that [Cole's] performance or leadership style would lend itself to a Supervisor role." ECF Doc. No. 17-3, Page ID# 164. Mr. Ginwalla stated that he chose another candidate based on his confidence in her ability to lead the group and communicate effectively while leading change efforts. ECF Doc. No. 17-4, Page ID# 166. In addition to the two hiring managers' affidavits, Swagelok has presented an affidavit from Malcolm Conner. Conner asserts that he had no input or part in the hiring process in the positions to which Cole applied after Cole's demotion.[3] ECF Doc. No. 17-2, Page ID# 144.

Cole has not disputed any of this evidence. Instead, his memorandum in opposition simply reiterates various comments made to Cole during his tenure at the OFC facility before to

---

[3] Although Cole alleges in the complaint that after he was demoted he" applied for approximately twenty (20) supervisory positions, and was turned down for nearly every one without an interview," (Cmplt., ECF Doc. No. 1, Page ID# 2, ¶12) in his opposition to Swagelok's motion for summary Cole has not presented evidence of applying for any positions other than the two 2013 application discussed herein.

10

his demotion and notes that he received an interview for a site supervisor position in 2009, which was a higher position than the ones for which he had applied in 2013. ECF Doc. No. 20, Page ID# 385. Thus, Cole appears to argue that if he received an interview for the higher ranked position, then he automatically should have received an interview for the lower ranked position. Cole's argument is unavailing. Moreover, Cole has not shown that the proffered reasons for him not being chosen had no basis in fact, did not actually motivate the employer's actions, or was insufficient to motivate the employer's actions. The record evidence shows that Cole has not met his burden of demonstrating that Swagelok's proffered legitimate, non-discriminatory reason for not hiring him for other supervisor positions was a pretext for discrimination.

Cole has not met his burden to establish that Swagelok's reasons for not hiring him for additional supervisory positions was a pretext for discrimination based on his TMJ. Moreover, Cole has not asserted and offers no evidence to support a claim that he was demoted because of disability discrimination. Accordingly, the court grants Swagelok's motion for summary judgment on the portion of Cole's Count 2 ADA discrimination claim asserting disability discrimination..[4] For the same reasons, the court also grants summary judgment to Swagelok on Cole's Count 3 state law disability discrimination claim.[5]

---

[4] As will be seen in the next section, the court also grants summary judgment to Swagelok on the remaining part of Claim II (i.e. hostile work environment claim).

[5] Because Title VII case law is generally applicable to claims of disability discrimination under Ohio Rev. Code § 4112.02, the court's decision on Cole's Title VII disability discrimination claim is also dispositive of his §4112.02 claim on the basis of disability discrimination (Count 3) and does not require a separate analysis. *Cleveland v. Fed. Express Corp.*, 83 F. App'x 74, 81 (6th Cir. 2003) *citing Birchard v. Marc Glassman, Inc.*, 2003 WL 21757771, at *2 (Ohio Ct.App. July 31, 2003) ("Case law interpreting and applying Title VII of the Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000 et seq. ('Title VII'), is generally applicable to cases involving R.C. Chapter 4112."); *McConaughy v. Boswell Oil Co.*, 126 Ohio App.3d 820, 711 N.E.2d 719, 725 (Ohio Ct.App.1998) ("federal case law interpreting Title VII of the Civil Rights Act of 1964, Section 2000e et seq., Title 42, U.S.Code, is generally applicable to cases involving alleged violations of R.C. Chapter 4112.") (citation and internal quotation marks omitted).

## B. Hostile Work Environment based on Religion and Disability

Swagelok also seeks summary judgment on Cole's hostile work environment claims based on religious and disability discrimination (Count 1 and the remainder of Count 2). Doc. No. 1, ¶¶22, 30.

### 1. Religion-based hostile work environment claim

The entirety of Cole's religion-based hostile work environment claim arises from a statement he claims was made by site manager Ivan Begovic. Cole Depo. pp. 122-23. Cole contends that around January 2010 he went to Begovic asking to be released from PIP. Cole Depo. pp. 123. Cole stated that he had learned the lessons he needed to but told him he "felt like David after Bathsheba." Id. Begovic responded that he was familiar with the story but asked Cole to explain the reference. Id. Cole asserts that the next time he spoke to Begovic, Begovic told Cole that he did not fit in with Swagelok culture and stated, "after all, can you imagine a Christian in the Marine Corps?" Id. Cole responded, "like Lieutenant Colonel Diddams? Lieutenant Colonel Diddams was a Christian, yet he was a fine Marine officer." Id. Cole asserts that Begovic later admitted that his comment was inappropriate. Id. at 144. Swagelok argues that even if this comment is accepted as having been made for purpose of summary judgment, it is an insufficient foundation for a hostile work environment claim. Swagelok is correct.

"Not all objectionable conduct rises to the level of actionable harassment." *Delozier v. Bradley Cty. Bd. of Educ.*, 44 F. Supp. 3d 748, 758 (E.D. Tenn. 2014). As the Supreme Court has noted, "[h]ostile work environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 103, 122 S. Ct. 2061, 2066, 153 L. Ed. 2d 106 (2002). The conduct at issue must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys.,*

*Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S. Ct. 2399, 2405, 91 L. Ed. 2d 49 (1986).

In *Lundy v. Gen. Motors Corp.,* 101 F. App'x 68, 72 (6th Cir. 2004), the Sixth Circuit found that co-workers' comments that plaintiff was a member of the KKK (an anti-Catholic group), wrote a '666' on his lunchbox, and a picture of a goat head with wings and horns that said "Satan Paul" (Paul being plaintiff's first name) was "neither severe or pervasive harassment" based on his Catholic religion. Similarly, in *Bourini v. Bridgestone/Firestone N. Am. Tire, LLC*, the Sixth Circuit found that bathroom stalls with anti-Islamic slurs and a pamphlet left on plaintiff's workstation of Christian proselytizing material addressed to "My Muslim Friend" did not rise to the level of a hostile work environment. 136 Fed.Appx. 747, 749 (6th Cir.2005). As the Eastern District of Tennessee pointed out, these holdings "demonstrate that if the complaint alleges only isolated instances of conduct, a high degree of hostility is required to support a claim of a hostile work environment. This is because a hostile work environment claim requires the plaintiff to demonstrate a culture that is so pervasive it effectively alters the conditions of employment." *Garcimonde-Fisher v. Area203 Mktg., LLC*, 105 F. Supp. 3d 825, 840 (E.D. Tenn. 2015).

Here, the solitary comment by Begovic regarding Christians in the Marine Corps did not demonstrate the high degree of hostility necessary to support a claim of hostile work environment. Similarly, the single comment cannot constitute severe or pervasive harassment. This is true even when considering other comments and the work environment as a whole.

Under the undisputed facts, Swagelok is entitled to judgment as a matter of law on Cole's hostile work environment claim as set forth in the Count 1 and in part of Count 2.[6]

### 2. Disability-based hostile work environment claim

Cole also asserts that Swagelok created a disability-based hostile work environment. Cole supports his disability-based hostile work environment claim with a single statement from Conner that Cole could not show pain from his TMJ on the shop floor for fear of appearing unapproachable or he would have to explain his TMJ issues to everyone in the group so that they would understand. ECF Doc. No. 20, Page ID# 387; Cole depo. pp. 87-89. Again, this solitary comment did not so permeate the workplace with discriminatory intimidation, ridicule, and insult to alter the conditions of the working environment. "Isolated incidents, if extraordinarily severe, may be sufficient to constitute actionable harassment." *Bergbauer v. Mabus*, 934 F. Supp. 2d 55, 77 (D.D.C. 2013). However, this isolated incident is not so extraordinarily severe as to constitute actionable harassment, especially in consideration of the full picture. Under the undisputed facts, Swagelok is entitled to judgment as a matter of law on this claim to the extent it is asserted in Count 1, Count 2 and/or Count 3.

### C. Retaliation Claim (Count 4)

Under Title VII, it is unlawful for an employer to discriminate against an employee for opposing an unlawful employment practice. 42 USC §2000e-3. To establish a *prima facie* case of retaliation under Title VII, Cole must establish that: (1) he engaged in activity protected by Title VII; (2) the defendants knew that he engaged in this activity; (3) the defendant took an employment action adverse to him; and (4) there was a causal connection between the protected

---

[6] Because "the elements of a hostile work environment state statutory claim are identical to the elements of hostile work environment under Title VII" [see Garcia v. ANR Freight Sys., Inc., 942 F. Supp. 351, 358 (N.D. Ohio 1996)] Cole's Claim III under RC § 4112.02 on the basis of religion also fails.

activity and the adverse action. *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Id.*

"Opposing" conduct includes "complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices." *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 276, (2009). In his opposition to Swagelok's motion for summary judgment, Cole contends that he complained to management and human resources about discrimination in 2009 and 2010. ECF Doc. No. 20, Page ID# 387-89. Cole also filed a formal charge with the EEOC on January 7, 2014. ECF Doc. No. 1, Page ID# 7, ¶ 39. Thus, Cole's activities constituted opposing conduct.

Cole argues that Swagelok took the following employment actions adverse to him "in direct response" to his "challenge of [Swagelok's] unlawful employment practices:" failing to correct the discrimination and demoting him in 2010, as well as failing to promote/hire him for multiple positions. ECF Doc. No. 20, Page ID# 389. Swagelok argues that there can be no causal connection between the EEOC filing in 2014 and any adverse employment action because none of the alleged adverse employment actions took place after or as a result of Cole's EEOC filing. ECF Doc. No. 17, Page ID# 100; Cole depo pp. 135-37. Cole has not provided any evidence of any alleged employment action that took place after his EEOC filing. Thus, there can be no causal connection between the EEOC filing and any alleged retaliation.

Even if a causal connection were assumed, absent direct evidence of relation, Cole's retaliation claim is subject to the same *McDonnell Douglas* burden-shifting framework as his discrimination claims. *Singfield v. Akron Metro. Hous. Auth.,* 389 F.3d 555, 563–64 (6th Cir.2004). And as has already been established above, Cole has not rebutted Swagelok's

15

contention that it had a legitimate and non-discriminatory reason for not hiring Cole for subsequent supervisory positions.[7]

Next, Swagelok argues that any retaliation claim relating to his 2010 demotion is barred by the statute of limitations. The statute of limitations for filing a Title VII EEOC charge is 300 days. *Amini v.Oberlin College*, 259 F.3d 493, 498 (6th Cir.2001), citing 42 U.S.C. § 2000e–5(e)(1). He contends that he made complaints to management about how he was being treated as late as January 2010 and asserts he was demoted that year as a result. ECF Doc. No. 20-1, Page ID# 409-419. Cole filed his EEOC charge on January 7, 2014. ECF Doc. No. 18-1, Page ID# 286. As a result, any claim based on occurrences more than three hundred days January 7, 2014 (March 13, 2013) is time barred.[8] Cole's demotion in 2010 occurred more than 300 days before he filed his EEOC claim. Any retaliation claim relating to his demotion is, therefore, time barred. For all of the above reasons, Swagelok is entitled to summary judgment on Cole's Count 4 retaliation claim.

---

[7] Although outside the statute of limitations period, Cole has also not rebutted Swagelok's contention that it had a legitimate and non-discriminatory reason for demoting Cole.

[8] To the extent Cole's argument implies that Swagelok's actions demonstrate a continuing violation under the EEOC Cole's that argument too fails. To establish a longstanding and demonstrable policy of discrimination (i.e. continuing violation), a plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." *Haithcock v. Frank*, 958 F.2d 671, 679 (6th Cir.1992). A plaintiff must establish that the employer's "standing operating procedure" included intentional discrimination against the class of which plaintiff was a member. *EEOC v. Penton Indus. Publ'g Co.*, 851 F.2d 835, 838 (6th Cir.1988)). "Unrelated incidents of discrimination will not suffice to invoke this exception; rather there must be a continuing over-arching policy of discrimination." *LRL Properties v. Portage Metro Hous. Auth.,* 55 F.3d 1097, 1106 (6th Cir.1995). Generally this exception is strictly construed and is satisfied only where the defendant has a known policy or rule supporting discrimination. *See, e.g., Dixon v. Anderson*, 928 F.2d 212, 217 (6th Cir.1991) (finding an "over-arching policy" of discrimination where that policy appeared plainly in the Ohio Revised Code and administrators openly adhered to the Code); *Alexander v. Local 496, Laborers' Int'l Union*, 177 F.3d 394, 408–09 (6th Cir.1999) (finding a "longstanding and demonstrable policy" where the union's "working-in-the-calling" rule, which was memorialized in its constitution and bylaws, resulted in the "de facto exclusion" of African Americans from union membership). Cole has not alleged discrimination by Swagelok against any other employees and, thus, fails to establish a longstanding and demonstrable policy of discrimination.

### D. Military Status Discrimination Claim

Cole also asserted a claim of discrimination under Ohio Revised Code § 4112.02 for discrimination based on his military status as an ex-marine (part of Count 3). Under RC § 4112.02 it is unlawful for an employer "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Swagelok argues that Cole's military status discrimination claim under ORC § 4112.02 should fail on the merits because there is no evidence Swagelok discriminated against Cole or created a hostile work environment based on Cole's military status. ECF Doc. No. 17, Page ID# 103. Thus, Swagelok argues that Cole cannot make out a prime facie case of military status discrimination.

Cole bases his military discrimination claim on a remark made by Conner that his leadership style did not work at Swagelok and later stating that it was because he had learned it in the Marine Corps. Cole Depo, p. 128. As with Cole's other claims, the *McDonnell Douglass* burden shifting framework applies to § 4112 discrimination claims. *Janiszewski v. Belmont Career Ctr.,* 2017-Ohio-855, ¶ 18; *Nelson v. Univ. of Cincinnati*, 2017-Ohio-514, ¶ 32, 75 N.E.3d 1304, 1312. And, as has already been established above, Cole has not offered any evidence that Swagelok's purported reasons for failing to hire him for other positions or for demoting him were pretexts for discrimination. Accordingly, Swagelok is entitled to judgment as a matter of law on Cole's military status discrimination claim.

## V. Conclusion

For the aforementioned reasons, Swagelok's motion for summary judgment is GRANTED and the case is DISMISSED.

**IT IS SO ORDERED.**

Dated: October 23, 2017

Thomas M. Parker
United States Magistrate Judge